UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

DONNA MARIE HOLLAND, et al.,    )
    )
    Plaintiffs,    )
    )
    V.    ) Civil Action No. 01-1924 (CKK)
    )
    )
THE ISLAMIC REPUBLIC    )
    OF IRAN, et al.,    )
    )
    )
    Defendants.    )

## MEMORANDUM OF LAW OF PLAINTIFFS RESPONDING TO COURT ORDER

This action arises out of the terrorist bombing on October 23, 1983, of the Marine

Barracks in Beirut, Lebanon.  In that attack, Robert S. Holland's young and promising life was

cut short a few weeks short of his 29th birthday, depriving his wife, his two sons, his brother and

his parents of his continued love, care, and companionship.  This action is brought by his wife

(Donna Holland), two sons (James Robert Holland and Chad Phillip Holland), brother (Patrick

Holland), and parents (Charles Holland and Rosemary Holland), and by the administrator of his

estate (Donna Holland), to recover damages for his wrongful death, for solatium and intentional

infliction of emotional distress, and punitive damages.

In *Peterson et al. v. Islamic Republic of Iran, et al.*, and *Boulos et al. v. Islamic Republic*

*of Iran*, et al., Civil Actions Nos. 01-2094 and 01-2684, 264 F. Supp.2d 46 (D.D.C. 2003), this

Court held that two of the same defendants present here, The Islamic Republic of Iran and MOIS,

were jointly and severally liable for the same terrorist bombing attack on the marine barracks,

which killed 240 other American serviceman in addition to Robert S. Holland, and injured many

others.  That finding operates as a collateral estoppel against the same two defendants, and we do not propose to "re-invent the wheel" in this case.[1]  The third defendant here, the Iranian Revolutionary Guard Corps (a/k/a "the Pasdaran") is a non-traditional agency of the Government of Iran which functions as an intelligence organization and a military instrument for exporting militant Islamic fundamentalism from Iran.  Its liability for the same terrorist bombing for which this Court has already found defendants Iran and MOIS liable will be demonstrated at trial.

In an Order of September 14, 2004, the Court ordered plaintiffs to submit a Memorandum of Law by January 5, 2004, supporting their causes of action herein.  This Memorandum responds to that Order.

Attached at the end of this Memorandum is a Witness List and a list of Proposed Exhibits, also responsive to the Court's Order.

---

[1]  The "offensive" use of collateral estoppel is committed to the discretion of the Court, and will generally be allowed where, as here, there is no unfairness to defendants. See, e.g., *Jack Faucett Associates Inc. v. AT&T*, 744 F.2d 118, 124 (D.C. Cir. 1984).  In *Peterson*, the Court made extensive and well-documented findings that (1) the emergence of Hezbollah as a major terrorist organization was due to the government of Iran; (2) the approval of the highest government officials was necessary for Hezbollah to support and execute the October 23, 1983, attack on the Marine Barracks; (3) any act of such high officials of Iran must be deemed an act of the government of Iran; (4) Hezbollah and its agents received massive technical and financial support from the government of Iran and its ministries; and (5) the bombing attack was an "extrajudicial killing."

Defendants, although they had a full and fair opportunity to litigate these issues, defaulted in *Peterson* and again in this case.  They are obviously not seeking to "re-litigate" any of the issues decided against them in *Peterson,* and having refused to participate in *Peterson* or this case, cannot complain of any additional burden.  Accordingly, there is no conceivable "unfairness" to defendants in applying collateral estoppel in these circumstances.

## <u>ARGUMENT</u>

I.  **THE FSIA ALLOWS PLAINTIFFS TO BRING ALL CAUSES OF ACTION THAT FALL WITHIN THE TERMS OF A § 1605(a)(7) EXCEPTION.**

28 U.S.C. § 1605, by its terms, revokes foreign states' jurisdictional defense of sovereign immunity for certain causes of action.  The exceptions found at § 1605 relate specifically to certain types of activities and torts of the foreign state, such as commercial activities, expropriations of property in violation of international law, and non-commercial torts.  Claims falling within an enumerated exception are rendered jurisdictionally proper in the United States courts.  Once the immunity defense is lifted, plaintiffs can pursue whatever causes of action are available to them.

Although § 1605 lifts the immunity defense and provides a basis for federal jurisdiction, § 1605 does not itself create any causes of action.  Nothing in the FSIA limits the sources of potentially applicable law under which a plaintiff may assert a cause of action against a non-immune foreign state.  These sources of potentially applicable law can be state common or statutory law, federal common or statutory law (including such principles of international law as are incorporated in and enforceable under federal common law), and even foreign law.

The most recent addition to the § 1605 list of sovereign immunity exceptions is § 1605(a)(7), enacted in 1996 as part of a concerted response to terrorism that targeted United States citizens.  Section 1605(a)(7), known as the "state-sponsored terrorism exception," revokes immunity and confers jurisdiction when:

> money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the

provision of material support or resources ... for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment or agency.

28 U.S.C. § 1605(a)(7).

With § 1605(a)(7), "Congress sought to create a judicial forum for compensating victims of terrorism, and in so doing to punish foreign states who have committed or sponsored such acts and deter them from doing so in the future." *Bettis v. Islamic Republic of Iran*, 315 F. 3d 325, 329 (D.C. Cir. 2003).

    **A.**    **Section 1606 of the FSIA Provides that When a Cause of Action Is Available Against Private Individuals, It Must Be Applied to Non-Immune Foreign States "In the Same Manner."**

Section 1606 of the FSIA provides:

As to any claim for relief with respect to which a foreign state is not entitled to immunity under Sections 1605 or 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages.

28. U.S.C. § 1606.  The Supreme Court has stated this language means exactly what it says: where "state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances." *First National City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 622 n.11 (1983).

Section 1606 provides that, once immunity has been lifted, any cause of action available against private individuals must likewise be made available against the non-immune foreign state. Section 1606 thus provides that, to determine whether a cause of action exists against the non-immune foreign state, the Court need determine only whether a cause of action would be

available against a private individual in like circumstances.  If it would, then the foreign state "shall be liable" in the same manner and to the same extent, whether the underlying cause of action is rooted in state or federal common law, international law, foreign law, or applicable state or federal statutory law.

Section 1606 applies to claims authorized by § 1605(a)(7), as it does to any of the exceptions set forth in § 1605.  Thus, in a particular case where Section 1605(a)(7) revokes a foreign state's immunity, Section 1606 requires that the foreign state shall be liable in the same manner and to the same extent as a private individual would be liable in the same circumstances.

**B.**  **Under § 1606, Two Federal Statutes Creating Causes of Action Against Individuals for Terrorist Actions Are Made Fully Applicable to Foreign States: the Torture Victims Protection Act and the Flatow "Amendment."**

Two federal statutes are applicable to foreign states under Section 1606's prescription requiring them to be held liable in the same manner as individuals in like circumstances: The Torture Victims Protection Act ("TVPA"), 28 U.S.C. §1350 Note, and the Flatow "Amendment," 28 U.S.C. § 1605 Note.

**1. The TVPA.**

The Torture Victims Protection Act, pub. L. 102-256, 106 Stat. 73 (reprinted at 28 U.S.C. § 1350 note) reflects fundamental international law norms and specifically provides a cause of action against individuals for certain terrorist acts applicable to this case.

The TVPA provides as follows:

> [a]n individual who, under actual or apparent authority, or color of law, of any foreign nation–
> ...
> (2) subjects an individual to extrajudicial killing shall, in a civil action, be liable

for damages to the individual's legal representative, or to any person who may be a claimant in an action for wrongful death.

28 U.S.C. § 1350 note.   "Extrajudicial killing" –

means a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples.  Such term, however, does not include any such killing that, under international law, is lawfully carried out under the authority of a foreign nation.

28 U.S.C. § 1350 note sec. 3(a).

By its explicit terms, the TVPA sets forth "a clear mandate ... providing authority that establishes an 'unambiguous and modern basis for' federal claims of torture and extrajudicial killing." *Sosa v. Alvarez-Machain*,  124 S. Ct. 2739 2004 U.S. LEXIS 4763 at *63 (2004) (quoting H.R. Rep. No. 102-367, pt. 1, at 3 (1991).   By virtue of § 1606, the cause of action reflected statutorily in the TVPA–which the Supreme Court in *Sosa* described as mirroring a cause of action provided by international law–must be available against non-immune foreign states themselves "in like circumstances."

The fact that the TVPA does not expressly state that the cause of action it creates against individuals will also run against a foreign state is neither exceptional nor significant.  That is not how the FSIA operates.  Indeed, absent the revocation of sovereign immunity in Section 1605(a)(7), the TVPA cause of action would not run against any foreign state.

However, with the enactment of Section 1605(a)(7), the international-law cause of action codified in the TVPA necessarily reaches foreign states because Section 1606 mandates that such non-immune states shall be liable in the same manner as individuals.  That is how the

FSIA–through Section 1606–operates.  Congress, to our knowledge, has never created specific causes of action against foreign governments.  Rather, foreign state liability is created by lifting the bar of immunity and rendering foreign states liable–through the operation of Section 1606-- for any causes of action to which individuals would be subject.  In this case, the cause of action created by the TVPA for "extrajudicial killing" or "wrongful death" is thereby made available against the non-immune foreign state.

### 2.  The Flatow Amendment.

During the same session that Congress enacted § 1605(a)(7), providing jurisdiction for suits against foreign states for certain types of terrorism claims, Congress enacted the Flatow Amendment, 28 U.S.C. § 1605 note.  This statute, which was enacted separately, and is not really an "amendment" to the FSIA, provides as follows:

> [a]n official, employee, or agent of a foreign state designated as a state sponsor of terrorism ... while acting within the scope of his or her office, employment, or agency shall be liable to a United States national or the national's legal representative for personal injury or death caused by acts of that official, employee or agent for which the courts of the United States may maintain jurisdiction under 1605(a)(7) ... for money damages, solatium, pain and suffering, and punitive damages if the acts were among those described in section 1605(a)(7).

28 U.S.C. § 1605 note.  Congress thus created a federal cause of action – using the same "shall be liable" terminology found in both § 1605(a)(7) and the TVPA–against individuals acting at the behest of foreign terrorist states.

By itself, the Flatow Amendment creates a civil claim against individual terrorists, not foreign states. See *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F. 3d 1024, 1034 (D.C. Cir. 2004).  This is not surprising.  Creation of a cause of action running specifically against a foreign

state would be inconsistent with the basic approach of the FSIA, which merely lifts jurisdictional immunity in certain defined circumstances.  Instead, the FSIA imposes the same liability on non-immune foreign states as on private individuals.  28 U.S.C. § 1606.  Because the Flatow Amendment sets forth a right of action and specific damages remedies against private individuals Section 1606 requires that such rights of action and remedies likewise be available against the non-immune foreign state.

Nothing in *Cicippio-Puleo* undermines this conclusion.  *Cicippio-Puleo* did not address Section 1606 of the FSIA, and therefore never considered whether Section 1606 can provide a basis for asserting federal statutory causes of action against foreign states.  *Cicippio-Puleo* did not address the TVPA at all, and only addressed the Flatow Amendment in the limited context of the narrow arguments tendered by plaintiffs in that case.  The plaintiffs in *Cicippio-Puleo* argued only that Section 1605 (a)(7) of its own force, or the Flatow Amendment, of its own force, or those two provisions read together, created a new cause of action against foreign states.  Based on the plain language of those two provisions, the D.C. Circuit narrowly and carefully held that "neither section 1605(a)(7) nor the Flatow Amendment, separately or together, establishes a cause of action against foreign state sponsors of terrorism." 353 F. 3d at 1027; id. at 1034.

The Court of Appeals carefully matched its ruling to the specific arguments made by the plaintiffs before it, which were arguments based solely on § 1605(a)(7) and the Flatow Amendment: "The language of section 1605(a)(7) and the Flatow Amendment–the only provisions upon which plaintiffs rely–is clear." 353 F.3d at 1033.  The Court repeatedly stated that it was only construing Section 1605(a)(7) and the Flatow Amendment, separately and "in

tandem." Id. at 1027, 1033.  Appellants never raised, and the court never considered, the impact of Section 1606.  Indeed, the court expressly declined to consider the relationship between Section 1606 and the Flatow Amendment because the issue was raised only by amici, and "we do not ordinarily decide issues not raised by the parties."  Id.

Even if *Cicippio-Puleo* were thought somehow to have decided the Section 1606 issue as applied to the Flatow Amendment, it did not and could not have decided any issue related to any other statutory cause of action (such as the TVPA), let alone state or federal common law, or foreign law.  Indeed, *Cicippio-Puleo* specifically reserved the question whether plaintiffs could pursue causes of action available under alternative sources of law, and remanded for that purpose.  353 F. 3d at 1036.

In *Acree v. Republic of Iraq*, 370 F.3d 41 (D.C. Cir. 2004), the court again noted that the *Acree* plaintiffs had likewise "pointed to no [other] source of liability other than §1605(a)(7) and the Flatow Amendment," and failed to identify "any other specific source in state, federal, or foreign law for their cause of action,"  370 F 3d at 52-53, clearly suggesting that, if such a specific source had been identified (as we have done here), the *Acree* plaintiffs could have proceeded with their claims.

In *Kilburn v. Socialist People's Libyan Arab Jamahiriya,* 376 F.3d 1123 (DC Cir. 2004), the D.C. Circuit rejected arguments by appellant Libya that the terrorism exception to sovereign immunity, Section 1605(a)(7) of the FSIA, required "but for" causation rather than merely "proximate causation," and that a foreign state is not responsible for the acts of its agents if it did not directly finance those acts. 376 F.3d at 1127-30.  However, the court declined to reach the

question whether, absent a *direct* private right of action under the Flatow Amendment, plaintiffs could ground their claims on other sources of substantive law, <u>id</u>. at 1133-36, because the court declined to exercise pendent jurisdiction over that issue.  However, the court did expressly note that *Cicippio-Puleo* reserved that issue, noting that it declined "to decide whether terrorism victims invoking § 1605(a)(7) have other causes of action." <u>Id</u>. at 1133.

More recently, in *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F. 3rd 192 (D.C. Cir. 2004), the Court again refused to dismiss a similar terrorism-based cause of action despite Libya's argument that *Cicippio-Puleo* foreclosed such actions.

C.    **This Court Has Already Held In *Dodge v. Islamic Republic of Iran* that Both the TVPA and the Flatow Causes of Action Survive *Cicippio-Puleo* Through the Operation of Section 1606.**

The principle that both the TVPA and the Flatow Amendment can be sources of federal statutory causes of action against a state sponsor of terrorism because they support actions against individuals in like circumstances through the operation of Section 1606 has already been approved and accepted by this District Court.  In a <u>Memorandum and Opinion</u> of August 25, 2004, in the case of *Dodge et al v. The Islamic Republic of Iran, et al.*, CA No. 03-252 (D.D.C. Aug.25, 2004), this Court held that, notwithstanding *Cicippio-Puleo*, plaintiffs similarly situated to plaintiffs here had stated viable causes of action under Section 1606 of the FSIA. <u>Memorandum and Opinion</u> at 6-9 and note 8.  (Copy attached).  In particular, the Court found that plaintiffs had causes of action under both the Torture Victims Protection Act and the Flatow "Amendment," because, under Section 1606 of the FSIA, state sponsors of terrorism could be held liable in the same manner and to the same extent as private individuals who had committed

the same acts of terrorism:

> These two statutes [the TVPA and the Flatow Amendment] provide a basis for plaintiffs' recovery under the facts as found.

Id.  The Court explained its reasoning as follows:

> The D.C. Circuit's recent ruling in *Cicippio-Puleo v, Islamic Republic of Iran*, 353 F.3d 1024 (D.C. Cir. 2004), does not undermine the ability of any victim of terrorism to bring an action under any potentially applicable law otherwise applicable to individuals.  In particular, *Cicippio-Puleo* did not address § 1606, and therefore did not consider whether 28 U.S.C. § 1606 provides a basis for asserting federal *statutory* causes of action against foreign states.

Id., n.8.  A copy of the <u>Memorandum and Opinion</u> is attached hereto for the Court's convenience.

## II.    Even If Federal Statutes Were Held Inapplicable, Federal Common Law, Including Incorporated International Law, Provides Equivalent Causes of Action and Remedies for Victims of State-Sponsored Terrorism.

As described above, when immunity is lifted because an exception to § 1605 applies, the

foreign state is subject to all causes of action made available by the facts, whether under

applicable federal law, state, foreign, or international law.  Even if, contrary to our arguments and

to the holding of *Dodge* described above, it were held that federal statutory causes of action such

as the TVPA and the Flatow Amendment were not available, federal common law, and especially

federal common law as it incorporates international law, would still be available as a basis for the

instant claims.

Cases involving foreign state-supported terrorist actions against American citizens clearly

implicate foreign policy concerns and interests, in an unfortunately direct and visceral way.

Precisely because such actions against American citizens are designed and intended to influence

United States policy, they have foreign policy implications.[2]

Federal common law "exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of states *or our relations with foreign nations*, and admiralty cases." *Texas Industries, Inc. v. Radcliff Materials*, 451 U.S. 630 (1981); <u>see also</u> *Sosa*, 124 S.Ct. 2739, 2004 LEXIS 4763 at *66.

> **A.** **Federal Common Law Incorporates International Law Norms Against Extrajudicial Killing, Allowing Such Violations To Be Redressed Through Private Actions.**

Certain fundamental principles of international law are incorporated into, and are part of, federal common law.  "International law is part of our law, and must be ascertained and administered by the courts of justice of appropriate jurisdiction as often as questions of right depending upon it are duly presented for their determination."  *The Paquete Habana*, 175 U.S. 677, 700 (1900); see also *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 423 (1964)("United States courts apply international law as part of our own in appropriate circumstances").  As the Supreme Court recently re-affirmed, from the earliest days of our Nation, a "private remedy was thought necessary for diplomatic offenses under the law of nations." *Sosa*, 124 S. Ct. 2739, 2004 U.S. LEXIS 4763 at *55-56.  The "First Congress understood that the district courts would recognize private causes of action for certain torts in violation of the law of nations...." Id. at *57.

---

[2]  Acts of terrorism have a political purpose; they are intended to influence or harm the Nation as opposed to merely the individuals involved.  <u>See, e.g.</u> *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 112 (D.D.C. 2003).

As *Sosa* made clear, not every international law delict is remediable by a private right of action in United States courts, and there is a "high bar" on recognition of international principles as part of the common law, enforceable by private right of action. *Sosa*, 2004 U.S. LEXIS 4763 at *61-62.  However, *Sosa* makes equally clear that certain international law principles are enforceable in United States courts as federal common law.  These principles involve those concrete, well-defined norms that are universally accepted, involving conduct that is universally condemned. Id. at * 62.  One such clearly accepted international norm that is universally accepted, as reflected in the TVPA, is that international law prohibits acts of extrajudicial killing.

The Restatement (Third) of Foreign Relations leaves no doubt that a nation violates clearly established and well-defined norms of international law if it "practices, encourages, or condones" murder, defined as the killing of an individual by a state "other than as lawful punishment pursuant to conviction in accordance with due process of law, or as necessary under exigent circumstances."  RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 702 and comment f (1987).  As this Court has held, murderous attacks such as the one involved here are "clearly contrary to the precepts of humanity as recognized in both national and international law." *Dammarell*, 281 F. Supp. 2d at 192.

Iran's role in the murderous attack on the Marine barracks in which Robert Holland lost his life clearly violated the norms of international law against murder or extrajudicial killing, and such fundamental norms of international law are sufficiently incorporated into federal common law to provide a basis for a right of action to redress such wrongs.

**B.  This Court Has Previously Applied Federal Common Law in Terrorism Cases.**

In *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128, 134, (D.D.C. 2001), this

Court applied federal common law "to calculate the relief to which plaintiffs are entitled."  Judge

Jackson explained the Court's reasoning:

> Because Michael Wagner's death occurred in Lebanon, and not a state of the
> United States, the principles set forth in section 6 of the <u>Restatement (second) of
> Conflicts</u> are best achieved by applying federal common law.  Other possible
> choices of state law, such as the law of North Carolina (e.g., where the decedent
> formerly resided or his kindred now reside) or the District of Columbia (where the
> suit was brought) would eventually lead in other cases to divergent measures of
> recovery for essentially identical claims against foreign defendants guilty of
> terrorist crimes against U.S. citizens...  Specifically, in FSIA claims involving
> claims for personal injury or death resulting from state sponsored terrorism, the
> application of federal common law will ensure the greatest level of predictability
> and uniformity.

<u>Id</u>. at 134-35.  In *Wagner*, the federal common law rules applied by the court were derived from

the <u>Restatement (Second) of Torts</u>.  Other courts have taken the same approach, turning to the

Restatement as setting forth the presumptive elements of applicable federal common law for

purposes of imposing liability for state-sponsored acts of terrorism.  <u>See</u> *Jenco v. Islamic*

*Republic of Iran*, 154 F. Supp. 2d 27, 33-37 (D.D.C. 2001)(applying Restatement to battery,

assault, false imprisonment, and intentional infliction of emotional distress claims); *Sutherland v.*

*Islamic Republic of Iran*, 151 F. Supp. 2d 27, 48-50 (D.D.C. 2001)(applying Restatement to,

*inter alia*, battery, assault, and intentional infliction of emotional distress claims.)[3]

---

[3]  In *Bettis*, the D.C. Cicuit noted that "the term 'federal common law' seems to us to be a
misnomer," 315 F. 3d at 333, but nonetheless acknowledged that federal courts in FSIA and
Flatow Amendment cases have accepted § 46 of the Restatement.... as a proxy for state common

Moreover numerous other decisions of this Dstrict Court have also held that, even if the Flatow Amendment does not provide a direct cause of action against state sponsors of terrorism, such actions can be grounded in other sources of substantive law, including federal common law. "Even if the Flatow amendment were held not to create a federal cause of action against state sponsors of terrorism, plaintiffs nevertheless would have valid claims against Iran and MOIS under state and/or federal common law.  Courts have regularly concluded that common law claims for e.g., wrongful death, survival, assault, and battery may be asserted against state sponsors of terrorism...." *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 194 (D.D.C. 2003).  Accord, *Kilburn v. The Republic of Iran*, 277 F. Supp.2d 24, 35-36 (D.D.C. 2003) (a "plaintiff bringing suit under Section 1605(a)(7) may base his claim on conventional common law torts such as assault, battery, and intentional infliction of emotional distress.") *Kilburn* cited numerous prior decisions of this Court holding that claims against state sponsors of terrorism may be based on such "conventional common law torts.... *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 2003 U.S. Dist. LEXIS 12572 at *29 n. 6 (D.D.C. July 17, 2003)(Lamberth, J.); *Acree v. Republic of Iraq*, 271 F. Supp. 2d 179, 2003 U.S. Dist. LEXIS 11421, at *99 (D.D.C. July 7, 2003)(Roberts, J.); see also *Stethem*, 201 F. Supp. 2d at 87; *Jenco v. Islamic Republic of Iran*, 154 F. Supp. 2d 27, 33-37(D.D.C. 2001), aff'd *Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003); *Sutherland v. Islamic Republic of Iran*, 151 F. Supp. 2d 27, 47-50 (D.D.C. 2001); *Andersen v. Islamic Republic of Iran*, 90 F. Supp. 2d 107, 113 (D.D.C. 2000); *Cicippio v. Islamic Republic of Iran*, 18 F. Supp. 2d 62 (D.D.C. 1998)."  277 F.

law of intentional infliction of emotional distress," and itself relied on the Restatement.  Id.

Supp. 2d at 36-37.

**C.     There Is Ample Basis for Recognizing a Federal Common Law Right of Action for Wrongful Death/Solatium.**

The Supreme Court has recognized that there may be circumstances where recognition of a federal common law right of action for wrongful death may be necessary to further important federal interests.  See, e.g., *Moragne v. States Marine Lines*, 398 U.S. 375 (1970); see also *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996).  The Supreme Court has expressly recognized that the universal availability of wrongful death actions as a matter of state statutory law has led to the development and recognition of a generally accepted public policy adopting the concept of wrongful death into general decisional law, above and beyond specific state statutes:

> These numerous and broadly applicable statutes, taken as a whole, make it clear that there is no present public policy against allowing recovery for wrongful death.... This legislative establishment of policy carries significance beyond the particular scope of each of the [state] statutes involved.  The policy thus established has become itself a part of our law, to be given its appropriate weight not only in matters of statutory construction, but also in those of decisional law.

*Moragne,* 398 U.S. at 390-91 (emphasis added).[4]  The Court concluded, "it is sufficient at this point to conclude ... that the work of the legislatures has made the allowance of recovery for wrongful death the general rule of American law, and its denial the exception." Id. at 393.

In a very similar fashion, the federal statutory framework applicable here makes recovery

---

[4]  *Moragne* involved a claim by a widow of a longshoreman for wrongful death within a state's territorial waters.  The lower courts disallowed the claim because it was not covered either by the Death on the High Seas Act or by the state's wrongful death statute.  The Supreme Court reversed, adopting a common-law claim for wrongful death in maritime law, explaining that it was an interstitial remedy that filled in the gaps between the maritime and the state wrongful death statutes.  Id. at 399-400.

for wrongful death the presumptive rule, applicable as a matter of decisional law.  Both the

TVPA and the Flatow Amendment expressly provide remedies for wrongful death.  As the

Supreme Court recognized in *Moragne*, "[i]t has always been the duty of the common-law court

to perceive the impact of major legislative innovations and to interweave the new legislative

policies with the inherited body of common-law principles–many of them deriving from earlier

legislative exertions."  398 U.S. at 392.  In considering the Congressional enactments for

providing compensation to victims of state-sponsored terrorism, and interweaving these policies

with earlier pronouncements based on state statutory wrongful death schemes, the Court may and

should recognize a federal common law wrongful death cause of action, just as the Supreme

Court did in *Moragne* in the maritime context.

      For the same reasons, a federal common law cause of action for solatium follows from,

and has the same basis as, a federal common law cause of action for wrongful death. As the

*Bettis* court noted with respect to solatium, "[a]pplication of federal common law is particularly

appropriate because the District of Columbia, which is the dedicated venue for actions against

foreign states ... does not recognize solatium damages in wrongful death actions while the Flatow

Amendment does."  *Bettis*, 315 F.3d at 332; <u>see</u> *Stethem v. Islamic Republic of Iran*, 201 F.

Supp. 2d 78, 79 (D.D.C. 2002)("Because the District of Columbia does not recognize claims for

loss of solatium, this Court has recognized this cause of action under federal common law by

relying upon the Second Restatement of Torts.") The *Bettis* court similarly adopted this rationale,

and extended it to intentional infliction of emotional distress.  315 F.3d at 333.

      Indeed, *Bettis* expressly relied on the Restatement (Second) of Torts § 46, noting that it

had been applied by a number of courts in terrorism cases "as a proxy for state common law of intentional infliction of emotional distress." 315 F.3d at 333. As the *Wagner* court has held, although the cause of action for solatium is not available under District of Columbia law, in "an intentional homicide case such as this,... solatium appears in any event to be indistinguishable from the intentional infliction of emotional distress for which the District of Columbia does generally allow recovery in tort...." *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d at 135, n.11. Accord, *Dammarell*, 381 F. Supp 2d at 196 n.19, citing *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 269 n.8 (D.D.C. 2002)("in an intentional homicide case such as a terrorist killing, solatium appears ... to be indistinguishable from ... intentional infliction of emotional distress.").

In sum, federal common law provides a basis for a full award of damages for victims of state sponsored terrorism. Plaintiffs here–all close relatives of the deceased, as well as the personal representative of his estate-- have claims for wrongful death, solatium, and intentional infliction of emotional distress.

## III. Alternative Application of State Law.

If, contrary to our arguments above, this Court decided that neither federal statutory law (through the operation of Section 1606 of the FSIA) nor federal common law, including norms of international law, provides a substantive basis for plaintiffs' causes of action, state law would. The problem with the application of state law is the multiplicity of states with some contact with and interest in such matters, as well the divergence of outcomes depending on which state law applied. In this case alone, the following states have some contact with and interest in the matter:

Kentucky, where the deceased resided when he died; where his last will and testament was admitted to probate; and where plaintiffs, his parents Charles Holland and Rosemary Holland, and his two sons, James Robert Holland and Chad Phillip Holland presently reside; Tennessee, where plaintiff his widow and the administrator of his estate, Donna Holland, resides; Texas, where his brother plaintiff Patrick Holland now resides; or the District of Columbia, where this action was brought.

All four states have wrongful death statutes, but with varying applicabilities; all four recognize a cause of action for intentional infliction of emotional distress; all four recognize claims for loss of consortium, but to varying extents; and none recognizes claims for solatium properly so-called.

Another problem is deciding which choice of law rules to apply. In FSIA actions, courts have been divided as to whether the choice of law rules of the state in which the court sits should apply, or federal choice of law rules should apply. Cf. *Barkanic v. Gen Admin. Of Civil Aviation of Peoples Rep. Of China*, 923 F.2d 957, 959 (2d Cir. 1991)(applying forum state choice of law rules), with *Chuidran v. Phillipine National Bank*, 976 F.2d 561, 564 (9th Cir. 1992)(applying federal common law choice of law rules).

In short, application of state law, while clearly justified in the event the Court declines to hold that federal statutory or common law applies, is fraught with complexity and the likelihood of inconsistent results in essentially identical claims against state sponsors of terrorism. In the words of the *Wagner* court, "other possible choices of state law ... would eventually lead ... to divergent measures of recovery for essentially identical claims against foreign defendants guilty

of terrorist crimes against U.S. Citizens..." 172 F. Supp. 2d at 134-35.  For that reason, we urge

the Court to eschew application of state law except as a last resort.  In the event the Court

concludes that it must apply state law, we request a further opportunity to brief the choice-of-law

and other state-law issues in a post-trial brief.

## IV.     Alternative Application of Foreign Law.

As a final alternative, it is clear that even the law of Lebanon or Iran would provide

causes of action against individuals who perform terrorist acts such as those involved here. In

Lebanon, individuals are liable for "illicit acts," which are acts "by which one party causes unjust

or intentional harm to the interests of another." Antoine El-Gemayel, ed., *The Lebanese Legal*

*System* 170 (1985).  In Iran, criminal laws generally conform to Islamic law, known as *sharia*.

Under *sharia*, punishment for certain crimes, such as intentional wounding or killing, is normally

retaliation in kind.  Frank E. Vogel, *The Trial of Terrorists Under Classical Islamic Law*, 43

Harv. Int'l l. J. 53, 59.  However, the victim or his survivors usually also have the option of

accepting compensation.  *Id.*

Thus both Lebanese and Iranian law may also prove to be viable sources of substantive

law that are made applicable to a foreign state by the operation of Section 1606.

## V.     Plaintiffs' First Amended Complaint Adequately Sets Out the Elements of All Possible Causes of Action.

Plaintiffs' First Amended Complaint herein expressly names and sets out causes of action

for wrongful death and solatium.  Complaint, paragraphs 35-48. It seeks economic damages,

survival damages, punitive damages, and damages for "extraordinary grief and mental anguish."

Complaint at 10-14, and paragraphs 37, 42, 47, 52.  Although the Complaint does not expressly

name other possible causes of action such as wrongful death under the TVPA, assault and intentional infliction of emotional distress, the elements of all those actions are properly pleaded and contained within the allegations of the Complaint. The Complaint sets forth all necessary facts to establish a cause of action under any of the above theories.

Under the Notice pleading concept of Rule 8(a)(2), Fed. R. Civ. P., plaintiffs' First Amended Complaint is sufficient to embody any relevant source of law or theory of recovery. It is well-settled that a Complaint need not specify with perfect precision the exact theory of recovery in order to withstand a motion to dismiss:

> ...[M]any federal courts have held that a complaint is sufficient against a motion to dismiss if it appears that plaintiff may be entitled to any form of relief, even though the particular relief he demanded and the theory on which he seems to rely are not appropriate.

5 CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1219 (2d ed. 1990).

"The form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claims." *Peavy v. WFAA-TV, Inc.*, 221 F. 3d 158, 167 (5th Cir. 2000); accord, e.g., *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992)("the complaint need not identify a legal theory, and specifying an incorrect legal theory is not fatal"); *La Raza Unida v. Volpe*, 440 F. Supp. 904, 912 n.20 (N.D. Cal. 1977)("Modern rules of notice pleading require only a statement of facts upon which relief may be granted, not a definitive statement as to plaintiffs' theory of the case.")

Here, plaintiff expressly stated causes of action for wrongful death and solatium. The elements of a cause of action for wrongful death, whether under the Flatow Amendment, under

the TVPA, under federal common law, or even under state law, are essentially the same.  The same is true whether solatium is sought under the Flatow Amendment, the TVPA, or federal common law.  And, as noted above, this District Court has already held that the cause of action for solatium is essentially tantamount to the cause of action for intentional infliction of emotional distress, which is recognized in every potentially relevant state law as well.  *See Wagner*, *Damarell,* and *Surette*, cited and quoted at p.16, *supra*.

The First Amended Complaint as filed and served by plaintiffs provides sufficient notice that defendants Iran, MOIS, and the IRGC are sought to be held accountable for their actions in sponsoring and supporting the terrorist act which led to Robert Holland's death–the same terrorist act for which Iran and MOIS  have already been held liable nearly two years ago in *Peterson et al. v.  Islamic Republic of Iran*, et al., 264 F. Supp.2d 46 (D.D.C. 2003).  It provides notice that plaintiffs, who are all close relatives of Robert Holland, seek compensation for their loss and their suffering, and provides ample notice of the scale of the damages sought, including punitive damages, and the basic theories of recovery.  Defendants are in default.  These defendants have consciously and arrogantly chosen to disregard the processes of this Court.

Even if–contrary to our arguments–the Court should disagree that the Complaint is sufficient to provide notice of all possible relevant causes of action, Rule 15(b), Fed. R. Civ. P., provides ample opportunity for plaintiffs to amend pleadings "to conform to the evidence" even after trial or hearing, and the Court can always exercise its authority under Rule 15(b) to "freely" permit such amendment at that time.

## CONCLUSION

For the reasons stated, the Court should hold that plaintiffs have stated viable claims against defendants Iran, MOIS, and the IRGC under Section 1606 of the Foreign Sovereign Immunities Act.

Respectfully submitted,

_____
Paul G. Gaston, DC Bar # 290833
LAW OFFICES OF PAUL G. GASTON
1120 19th Street, NW
Suite 750
Washington, DC 20036
(202) 296-5856
Fax: (202) 296-4154

*Attorney for Plaintiffs*

DATED: January 5, 2005

## LIST OF PROPOSED WITNESSES

1. Dr. Bruce D. Tefft, Former Director, CIA Counterterrorism, Middle East Region

   Expert Witness on Role of IRGC/The Pasdaran

2. Dr. Jerome S. Paige, Jerome S. Paige & Associates, LLC

   Economic Consultant/Expert Witness on Damages

3. Donna Marie Holland, Individually and as Administrator of Estate of Robert S. Holland

   Wife/Widow of Robert S. Holland

4. Rosemary Holland

   Mother of Robert S. Holland

5. Charles Holland

   Father of Robert S. Holland

6. James Robert Holland

   Son of Robert S. Holland

7. Chad Phillip Holland

   Son of Robert S. Holland

8. Patrick Holland

   Brother of Robert S. Holland

## LIST OF PROPOSED EXHIBITS (subject to revision)

1.  Curriculum Vitae of Dr. Bruce Tefft

2.  Curriculum Vitae of Dr. Jerome Paige

3.  Economic Loss Analysis by Dr. Paige

4.  Copy of Marriage Certificate of Donna and Robert S. Holland

5.  Copy of Last Will and Testament of Robert S. Holland

6. Copy of DD-1300 Report of Casualty death of Robert S. Holland

7. Copy of Photo/Likeness of Robert S. Holland