UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONNA MARIE HOLLAND, et al., | ) |
| | ) |
|        Plaintiffs, | ) |
| | ) |
| V. | ) Civil Action No. 01-1924 (CKK) |
| | ) |
| | ) |
| THE ISLAMIC REPUBLIC | ) |
|    OF IRAN, et al., | ) |
| | ) |
| | ) |
|        Defendants. | ) |

**POST-TRIAL MEMORANDUM OF LAW OF PLAINTIFFS
RESPONDING TO COURT ORDER**

This action was tried to the Court on January 19, 2005. On that day, plaintiffs introduced evidence showing that defendants the Islamic Republic of Iran, MOIS, and IRGC were directly responsible for planning, supporting, financing, and executing a terrorist bombing attack on October 23, 1983, against the Marine Barracks in Beirut, Lebanon. Tr. 18–33, 39-62. In that attack, Robert S. Holland's young and promising life was cut short a few weeks short of his 29th birthday, depriving his wife, his two sons, his brother and his parents of his continued love, care, and companionship.

In an Order of January 19, 2005, the Court ordered plaintiffs to submit a final brief connecting the factual and legal issues in this case. The Court specifically asked plaintiffs to include a discussion (1) whether the relevant probate statute governing the administration of decedent's estate allows for the recovery of economic damages under a wrongful death action; and (2) whether the state in which each plaintiff-claimant resides allows for the collection of damages under solatium for a person of their status in relation to the decedent. This

Memorandum responds to that Order.

The principles governing the application of law to the facts here have been previously discussed by plaintiffs to a substantial extent in their Memorandum of Law submitted to the Court on January 5, 2005. There, plaintiffs showed that the Foreign Sovereign Immunities Act (FSIA) allows plaintiffs to bring all causes of action that fall within the terms of a Section 1605(a)(7) exception. Section 1606 of the FSIA provides that when a cause of action is available against private individuals, it must be applied to non-immune foreign states and their instrumentalities in the same manner. Thus, two federal statutes creating causes of action against individuals for terrorist actions are made fully applicable to states and their instrumentalities subject to the FSIA. These two statutes are the Torture Victims Protection Act, 28 U.S.C. § 1350 note, and the *Flatow* "Amendment," 28 U.S.C. § 1605 note. As demonstrated in our previous submission, and as affirmed in *Dodge v. Islamic Republic of Iran*, No. 03-252 (D.D.C. Aug. 25, 2004), both the TVPA and the *Flatow* causes of action survive *Cicippio-Puleo*[1] through the operation of Section 1606. The TVPA expressly imposes liability for an "extrajudicial killing" to "any person who may be a claimant in an action for wrongful death." The Flatow Amendment also imposes liability "for personal injury or death," and allows recovery by close family members of "money damages, solatium, pain and suffering, and punitive damages...."

As further demonstrated in our prior Memorandum, even if the two federal statutory causes of action described above were not made applicable through the operation of Section 1606, federal common law, including incorporated international law, provides essentially

---

[1] *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024 (D.C. Cir. 2004).

equivalent causes of action and remedies for victims of state-sponsored terrorism. Federal common law has always been concerned, inter alia, with "international disputes implicating the conflicting rights of states or our relations with foreign nations...." *Texas Industries, Inc. v. Radcliff Materials*, 451 U.S. 630 (1981).[2] As further demonstrated in our pretrial briefing, federal common law incorporates international norms against extrajudicial killing. It has been applied in numerous other terrorism cases. And there is a strong basis for recognizing federal common law rights of action for wrongful death and solatium.

All these points have been made in plaintiffs' prior submission of January 5, 2005, and will not be repeated here. Instead, in Section I below, we tie in these legal principles to the facts adduced at trial.

In Section II, we answer the Court's first question and demonstrate that the state law of Kentucky, where decedent's estate was admitted to probate, specifically allows recovery of economic damages–as well as punitive damages--in an action for wrongful death. And in Section III we demonstrate that the state laws where all the respective plaintiffs reside–Kentucky, Tennessee, and Texas--allow recovery of damages for either or both (i) solatium/loss of consortium, or (ii) intentional infliction of emotional distress, for persons in the status of the respective plaintiffs/claimants with respect to the decedent. In Section IV, we discuss the special status of the IRGC in this case, and why the award of punitive damages against the IRGC is especially well-justified.

---

[2] Plaintiffs' expert on counterterrorism, Dr. Bruce Tefft, testified that Iran's sponsorship of the terrorist act at issue here had a political purpose, and the intention was to drive U.S. and international peacekeeping forces out of Lebanon. Tr. 33-34.

**ARGUMENT**

I. **THE FACTS DEMONSTRATE THAT IRAN, MOIS, AND THE IRGC ARE INDIVIDUALLY, JOINTLY AND SEVERALLY LIABLE FOR THE TERRORIST ACT WHICH CAUSED THE DEATH OF ROBERT S. HOLLAND.**

Dr. Bruce Tefft, who was qualified by the Court and admitted to testify as an expert on counterterrorism, Tr. 13, described in great detail how the plot to attack the Marine barracks developed; how it was planned; how it was executed; and how Iran, the MOIS, and the IRGC all participated in that plot and worked together in planning, supporting, recruiting and training personnel, and helping to execute the attack. Tr. 15-63 generally.

This Court has already considered in another case much of the same evidence presented by plaintiffs here on January 19, 2005, with respect to the terrorist bombing of the Marine Barracks in Beirut, Lebanon on October 23, 1983. *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46 (D.D.C. 2003). Analyzing the same facts, the *Peterson* Court reasoned that "the FSIA utilizes the same definition of 'extrajudicial killing' as the Torture Victim Protection Act of 1991," and that "the development and detonation of an explosive charge" next to the Marine Barracks on October 23, 1983, which resulted in the death of 241 peacekeeping American servicemen–including Robert S. Holland–satisfies the definition of such an "extrajudicial killing." 264 F. Supp.2d at 61. The *Peterson* Court concluded that "the deaths of over 241 peacekeeping servicemen at the Marine barracks in Beirut, Lebanon, were caused by a willful and deliberate act of extrajudicial killing." Id.

The *Peterson* court continued, "as the result of the deaths of 241 American servicemen in Beirut, Lebanon, their parents, surviving siblings, children, and spouses have suffered and will

continue to suffer severe mental anguish and loss of society." Id.

The record in this case also amply supports the same conclusions. Dr. Tefft's testimony, along with the Exhibits introduced in support of that testimony, leaves no doubt that (1) Iran planned, approved, financed, and supported the attack; Tr. 19, 20, 23, 28, 31-32, 41, 48, 53-55, 57, and 61; (2) the MOIS played a key role in all elements of preparation, operational planning and support, Tr. 25-26, 43, 57, 58, and 61-62; and (3) the IRGC, a paramilitary group described as "the personal party militia of the Islamic Party and ... the Ayatollah" Tr. 24 was a "primary mover" for the attack, Tr. 62, with responsibility for recruiting and training the suicide bombers, preparation of the explosives, and installation of the explosives in the truck used by the suicide bombers. Id.; see also Tr. 19, 28, 32, 43, 49, 58.

Under any applicable legal standard, it is clear that all three defendants are directly responsible, jointly and severally, for the willful and deliberate "extrajudicial killing" of Robert S. Holland. This is clear whether the defendants' responsibility is analyzed under the Flatow Amendment; under the TVPA; or under federal common law as it incorporates norms of international law. All three prohibit, and provide remedies for, the extrajudicial killing of Robert S. Holland.[3]

Similarly, under well-established precedents, all plaintiffs here–immediate family members including children, parents, spouse, and siblings who remain close to the victim of terrorism–have viable and well-recognized causes of action for solatium. "These awards have explicitly been limited to 'immediate family' members, which is defined as including spouses,

---

[3] See Memorandum of Law submitted by Plaintiffs on January 5, 2005, at 5-18.

children, parents and siblings." *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 196 (D.D.C. 2003). As the *Dodge* court found, even after *Cicippio-Puleo*:

> The paradigm established by this Court in the various other decisions it has issued concerning compensation for victims of terrorism setting forth the framework for awarding damages to the plaintiffs both under federal statutory law and alternatively under federal and state common law, continues to apply, and allows recovery for the plaintiffs in this case. See *Kerr*, 245 F. Supp. 2d at 63-64; *Stethem*, 201 F. Supp. 2d at 87-93; *Wagner*, 172 F. Supp. 2d at 135-38; *Sutherland v. Islamic Republic of Iran*, 151 F. Supp. 2d 27, 47-53 (D.D.C. 2001); *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, 194-203 (D.D.C. 2003).

*Dodge v. Islamic Republic of Iran*, No. 03-252 (D.D.C. Aug. 25, 2004), Memorandum and Order at 9-10. The Court further noted "that even were this not so, federal common law causes of action still give rise to liability for the defendants." Id., n.9.

## II. KENTUCKY PROVIDES FOR THE RECOVERY OF ECONOMIC DAMAGES AND PUNITIVE DAMAGES IN A WRONGFUL DEATH ACTION.

Decedent's estate was admitted to probate in Kentucky. Tr. 121; Exhibits 19, 20. Donna Holland has been appointed the personal representative or "executrix" of decedent's Estate, Tr. 121, and Exhibits 19 and 20, and in that capacity, has sought recovery of economic damages to the estate and also punitive damages. She has submitted expert testimony and evidence to the Court that those economic damages were in the amount of $1,241,486. Tr.171, Exhibit 22.

Kentucky, by its Constitution and by statute, recognizes claims for wrongful death. Section 241 of the Kentucky Constitution provides that "whenever the death of a person shall result from an injury inflicted by negligence or wrongful act...damages may be recovered for such death from the corporations and persons so causing the same...." Kentucky's code expressly recognizes that wrongful death damages are due to the personal representative of the estate of the

deceased.

KRS 411.130 provides, in relevant part, as follows:

> (1)Whenever the death of a person results from an injury inflicted by the negligence or wrongful act of another, damages may be recovered for the death by the person who caused it, or whose agent or servant caused it.  If the act was willful or the negligence gross, punitive damages may be recovered.  The action shall be prosecuted by the personal representative of the deceased

Kentucky has long held that the measure of damages recoverable for wrongful death is the sum which would fairly compensate the estate of the deceased for the destruction of his ability to earn money.  E.g., *Louisville & N.R. Co. v. Eakins Adm'r*, 103 Ky 465, 45 S.W. 529 (1898); *Humble v. Mountain State Construction Co.*, 441 F.2d 816 (6th Cir. 1971); *Lutrell v. Wood*, 902 S.W. 2d 817 (Ky. 1995).   This is precisely the method of calculation used by plaintiff's economic loss expert in this case, Dr. Jerome Paige.  Tr. 161-165.

Moreover, as the Kentucky statute expressly provides, punitive damages may be recovered as well, if the "act was willful or the negligence gross."  E.g., *Phelps v. Louisville Water Co.*, 103 S.W. 3d 46 (Ky. 2003)(gross negligence).  Here, there is no question that the extrajudicial killing of Robert S. Holland was willful and malicious, and that punitive damages would be due under the Kentucky statute.

Accordingly, even if the Court held, contrary to our arguments, that state law, not federal statutory or common law, must provide the substantive basis for liability through the operation of Section 1606 of the FSIA, there is no question that plaintiff's wrongful death claim for both compensatory and punitive damages is well-founded.

### III. THE LAWS OF TENNESSEE, KENTUCKY, AND TEXAS RECOGNIZE THE RIGHT TO DAMAGES FOR LOSS OF CONSORTIUM/SOLATIUM AND FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

All three states in which plaintiff/claimants reside–Tennessee, Kentucky, and Texas–recognize claims for loss of consortium for the death of a close family member, such as a spouse, child, or parent. In addition, although Texas does not recognize a claim for loss of consortium by a sibling, all three states, including Texas, recognize claims for intentional infliction of emotional distress by plaintiff-claimants in the situation of those before the Court.

#### A. The Claim for Solatium Damages Is Equivalent to the Claim for Loss of Consortium, and Has Been held to Encompass Such Claims.

The claim for loss of consortium is essentially the same as, and interchangeable with, a claim for solatium damages such as the claims asserted here. "A separate loss which is encompassed within solatium is the loss of decedent's society and comfort." *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 31 (D.D.C. 1998). Accord, e.g., *Elahi v. Islamic Republic of Iran,* 124 F. SUPP. 2d 97, 109-110 (D.D.C. 2000)("The loss of decedent's society and comfort is also encompassed within solatium."); *Brooks v. Bienkowski*, 150 Md. App. 87, 818 A2d 1198, 1200, n.1 (Md. Ct. Spec. App. 2003)("We use the term 'loss of solatium' as shorthand for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, attention, advice or counsel....").

In numerous cases, this Court has used the terms "solatium," "loss of solatium," and "loss of consortium" interchangeably. E.g., *Dammarell v. Islamic Republic of Iran*, 281 F. Supp.2d 105 (D.D.C. 2003)("Spousal consortium and solatium awards have ranged from $8 million to $12 million."); *Kerr v. Islamic Republic of Iran*, 245 F. Supp. 2d 59, 64 (D.D.C. 2003)("In

computing awards for loss of consortium and solatium, the Court appropriately considers the following factors...."); *Stethem v. Islamic Republic of Iran*, 201 F. Supp. 2d 78, 92 (D.D.C. 2002)("entitled to damages for loss of consortium and solatium"); *Hegna v. Islamic Republic of Iran*, 2002 U.S. Dist. LEXIS 27544 at * 21 (D.D.C. 2002)("entitled to damages for loss of solatium and consortium....").

Accordingly, state law that provides for compensation for "loss of consortium" can provide a substantive basis, under Section 1606 of the FSIA, for the recovery by all immediate family members who would have such a claim under the law of their respective states.

    B.    <u>Tennessee, Where Decedent's Widow, Mrs. Donna Holland Resides, Recognizes Claims for Loss of Consortium By A Spouse in Wrongful Death Actions.</u>

Mrs. Holland testified that she was the surviving widow of Robert S. Holland and that she resided in Tennessee. Tr. 64, 72.

Tennessee's Supreme Court has held that Tennessee's wrongful death statute, Tenn. Code Ann. § 20-5-113 (1994), permitted the recovery of spousal and parental consortium damages. In *Jordan v. Baptist Three Rivers Hospital*, 984 S.W. 2d 593, 598-601 (Tenn. 1999), the court reasoned:

> The wrongful death statute neither explicitly precludes consortium damages nor reflects an intention to preclude consortium damages. The statute's language does not limit recovery to purely economic losses. To the contrary, the statute's plain language appears to encompass consortium damages.

Id. at 600. The Tennessee Supreme Court further clarified what it meant by consortium damages, describing them in terms remarkably similar to the terms used and cited above to describe "solatium" damages:

> We hold that consortium-type damages may be considered when calculating the

> pecuniary value of a deceased's life. This holding does not create a new cause of action but merely refines the term "pecuniary value." Consortium losses are not limited to spousal claims but also necessarily encompass a child's loss, whether minor or adult. Loss of consortium consists of several elements, encompassing not only tangible services provided by a family member, *but also intangible benefits each family member receives from the continued existence of other family members. Such benefits include attention, guidance, care, protection, training, companionship, cooperation, affection, love, and in the case of a spouse, sexual relations.* Our holding conforms with the plain language of the wrongful death statutes, the trend of modern authority, and the social and economic reality of modern society.

Id. at 601-02, emphasis added.

Accordingly, there is no question that, if Tennessee law were applied to Mrs. Holland's claim for solatium/loss of consortium through the operation of Section 1606 of the FSIA, it would entitle her to recovery for such losses.

      C.      Kentucky, Where Decedent's Two Sons and Parents Reside, Recognizes Damages for Loss of Consortium.

James Robert Holland and Chad Philip Holland were about three and a half and one and a half years old at the time their father died on October 23, 1983. Tr. 73, 91. They moved back to Kentucky shortly after the family learned of Robert's death, so that they could be close their grandparents, Rosemary and Charles Holland. Tr. 130. Kentucky has recognized the right of minor children, as James and Chad were at the time of their father's death, for loss of parental consortium. *Giuliani v. Guiler*, 951 S.W. 2d 318 (Ky. 1997). The Supreme Court of Kentucky there stated, "It is the holding of this Court that Kentucky recognizes the claim of minor children for loss of parental consortium.... A claim for loss of parental consortium arises from a recognition of the common law as distinguished from the statutory law." 951 S.W. 2d at 323.

The record is rife with poignant testimony of how the lives of decedent's two minor children were adversely affected by his death and the disappearance of his guidance, consistency,

love and care from their lives at an early age. Tr. 97, 100-101,106-09, 110-113. Several witnesses agreed that the two children grew up with significant issues and problems associated with the lack of a father in their lives, and that they seemed often to be searching for ways of filling that void. Tr.131, 143-45, 154.

Moreover, Kentucky law also provides, by statute, that a child under eighteen whose parent is killed by the "malicious use of a deadly weapon, not in self-defense, may have a cause of action against the person who committed the killing and all others aiding or promoting, or any of them. In such actions the jury may give vindictive damages." KRS § 411.150.

Accordingly, there is no question that, if Kentucky law were deemed applicable through the operation of Section 1606 of the FSIA, decedents two sons–James Robert Holland and Chad Phillip Holland--would be entitled to damages for loss of consortium because of the death of their father, as well as vindictive damages because he was killed by use of a deadly weapon.

Charles Holland and Rosemary Holland, decedent's parents, are also residents of Kentucky, and have been at all relevant times. Tr. 123, 134. The Kentucky statute that provides for wrongful death damages for the death of a child speaks in terms of a "minor child," KRS § 411.135,[4] and Robert S. Holland, twenty-eight years old when he died, was clearly no longer a minor. Although we have found no Kentucky court decisions extending the right to recover damages for loss of consortium for the death of a non-minor son or daughter, we have found no

---

[4] The Kentucky statute expressly provides for damages for loss of consortium:
In a wrongful death action in which the decedent was a minor child, the surviving parent, or parents, may recover for loss of affection and companionship that would have been derived from such child during its minority, in addition to all other elements of the damage usually recoverable in a wrongful death action.

decisions barring such a recovery either. Indeed, in light of the reasoning and rationale of the Kentucky Supreme Court in the *Giuliani v. Guiler* case cited above, which freely extended such rights as a matter of common law to children, and which noted that "loss of consortium is a common law cause of action" and "common law grows and develops and must be adapted to meet the recognized importance of the family," 951 S.W. 2d at 320, it is likely that, if the question arose, the Kentucky Supreme Court would affirm the right of parents to recover for loss of consortium of their grown children, especially where there is evidence of continuing closeness and family bonds.[5] "This Court has the authority and responsibility to modify loss of consortium as a common law doctrine when necessary." Id.

Accordingly, it seems highly probable that Rosemary and Charles Holland, as the parents of the decedent, would have viable claims under Kentucky law for loss of consortium as the result of his extrajudicial killing by defendants here, if that law were deemed applicable under Section 1606 of the FSIA.

      D.    An Action for Intentional Infliction of Emotional Distress Is Also Subsumed Within a Claim for Solatium in These Circumstances, and All Three Relevant States Recognize the Availability of Such an Action for Plaintiffs-Claimants <u>Before the Court.</u>

This Court has repeatedly held, in many similar cases, that the action for solatium damages is essentially equivalent to an action for intentional infliction of emotional distress where that distress was caused by an intentional killing that is a part of a terrorist attack. In *Wagner v. Islamic Republic of Iran*, 172 F. Supp. 2d 128 at 135, n.11 (D.D.C. 2001), this Court

---

[5] In neighboring Tennessee, the law is clear that loss of consortium claims can be made for the death of a child, "whether minor or adult." *Jordan v. Baptist Three Rivers Hospital*, 984 S.W. 2d 593, 601-02 (Tenn. 1999), more extensively quoted at 9-10 above.

held that, although the cause of action for solatium is not available under District of Columbia law, in "an intentional homicide case such as this,... solatium appears in any event to be indistinguishable from the intentional infliction of emotional distress for which the District of Columbia does generally allow recovery in tort...."  Accord, *Dammarell*, 381 F. Supp 2d at 196 n.19, citing *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 269 n.8 (D.D.C. 2002)("in an intentional homicide case such as a terrorist killing, solatium appears ... to be indistinguishable from ... intentional infliction of emotional distress.").

The D.C. Circuit in *Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003), also adopted this rationale: "Application of federal common law is particularly appropriate because the District of Columbia, which is the dedicated venue for actions against foreign states, ... does not recognize solatium damages in wrongful death cases...." 315 F.3d at 332.[6] Indeed, *Bettis* expressly relied on the Restatement (Second) of Torts § 46, noting that it had been applied by a number of courts in terrorism cases "as a proxy for state common law of intentional infliction of emotional distress." 315 F.3d at 333.

In *Dammarell v. Islamic Republic of Iran*, 281 F. Supp. 2d 105, at 190 (D.D.C. 2003), the Court quoted and relied upon the testimony of an expert in grief counseling and emotional trauma to conclude that, in family members of individuals killed in terrorist acts such as the 1983 bombing of the United States Embassy in Beirut, trauma can manifest itself as part of a syndrome known as traumatic grief, or complicated grief, which refers to "the aftermath of losing someone

---

[6] In *Bettis*, the D.C. Cicuit noted that "the term 'federal common law' seems to us to be a misnomer," 315 F. 3d at 333, but nonetheless proceeded to apply it to define the boundaries of intentional infliction of emotional distress.

unexpectedly or under certain traumatic circumstances." The expert also there testified that "while the resulting PTSD [post traumatic stress disorder] might not be as intense as that of a person directly involved in the trauma itself, the most common cause of PTSD is the sudden death or traumatic injury of a family member." Id.  The *Dammarell* court relied heavily on that evidence, and concluded that, although not every plaintiff and family member in that case suffered from or was diagnosed with post traumatic stress disorder, "many if not all of the plaintiffs ...suffered from psychological symptoms consistent with those described by Dr. Pastor as being common consequences of traumatic, violent events." Id. at 191.  The same thread runs through the testimony of all immediate family members here: the shock of learning of their loved one's sudden death and disappearance; the emotional trauma and the aftermath of adjusting to their new reality; and the inability, even today twenty two years later, to put the wounds completely behind them.

All three relevant states recognize that immediate family members, including siblings who are close to the deceased, would have viable claims for intentional infliction of emotional distress in these circumstances.

1. <u>Texas</u>.  Plaintiff Pat Holland, decedent's brother, testified that he was a resident of Texas. Tr. 146.  He also testified that he remained close to his brother even as an adult, and that he was deeply moved and adversely affected by news of his death. Tr. 150-152;155.  Indeed, Mr. Holland was so moved at the recollection of receiving the news of his brother's death, that the Court had to take a short recess to allow him to regain his composure. Tr. 152.

> Texas recognizes the tort of intentional infliction of emotional distress based on section 46 of the Restatement (Second) of Torts. *Twyman v. Twyman*, 855 S.W.2d 619, 622 (Tex. 1993); RESTATEMENT (SECOND) OF TORTS §

> 46 (1965). The elements of such a claim are: (1) an intentional or reckless act that is (2) extreme or outrageous in character, (3) caused the plaintiff emotional distress, and (4) severe. *Twyman*, 855 S.W.2d at 621. Due to the lack of Texas cases interpreting the Restatement, we examine the text of section 46.
>
> Section 46(1) holds an actor liable for intentional or reckless conduct causing severe emotional distress without requiring that the victim suffer bodily (physical) harm in order to recover. Section 46(2) discusses conduct "directed at" a "third person" victim and allows bystander recovery for severe emotional distress without bodily harm only if the bystander is a member of the victim's immediate family. RESTATEMENT (SECOND) OF TORTS § 46 (1965).

*Johnson v. Standard Fruit & Vegetable Co.*, 984 S.W.2d 633 (Tex. Ct. App. 1997). In *Bettis*, the D.C. Circuit analyzed the application of Section 46(2) of the Restatement to family members of the victim, and concluded that the cause of action was available even to "immediate family members" who may not have been physically present at the time of the attack or killing giving rise to the emotional distress. However, the court strictly limited the definition of "immediate family" to the one used by the lower court in that case: "The Court defines one's immediate family as his spouse, parents, siblings, and children." 315 F. 3d at 331. Thus, as decedent's sibling, Pat Holland clearly qualifies for damages for intentional infliction of emotional distress under Texas law, if Texas law should be applied under Section 1606 of the FSIA, and under the *Bettis* interpretation of Section 46(2) of the RESTATEMENT (SECOND) OF TORTS.

2. <u>Kentucky</u>. As residents of Kentucky and immediate family members of the decedent, Charles and Rosemary Holland also qualify for damages for intentional infliction of emotional distress. Kentucky recognizes that tort as it is stated in Section 46(1) of the Restatement. *Craft v. Rice*, 671 S.W.2d 247 (1984). In *Wilhoite v. Cobb*, Ky. App., 761 S.W.2d 625 (1988), and *Allen v. Clemons*, Ky. App. 920 S.W.2d 884, at 886 (1996), an intermediate level Kentucky court declined to address subsection (2), "which makes the cause of action available to immediate

family members, because that is a function more properly addressed to our court of last resort." However, neither case decided that subsection (2) would not be available, assuming the issue were properly presented to the Kentucky Supreme Court. Certainly under the *Bettis* analysis noted above, the parents of the deceased would qualify to make claims for intentional infliction of emotional distress.

Decedent's children were too young at the time of his death to appreciate what happened, and accordingly do not rely on state-law claims in the nature of claims for intentional infliction of emotional distress.

3. <u>Tennessee</u>. Mrs. Donna Holland provided extensive testimony on the devastating emotional effect upon her of learning of the violent and sudden death of her husband. Tr. 90, 95, 99, 101-03, 104. The tort of intentional infliction of emotional distress, also known as the tort of outrageous conduct, was recognized in Tennessee in *Medlin v. Allied Inv. Co.*, 217 Tenn. 469, 398 S.W.2d 270, 274-75 (Tenn. 1966). In *Foster v. Trentham's, Inc.*, 458 F. Supp. 1382, 1383 (E.D. Tenn. 1978), the Court recognized that subsection (2) of Restatement Section 46, providing for third party liability to "immediate family," was part and parcel of the Tennessee law governing intentional infliction of emotional distress. Accordingly, there is no question that Mrs. Holland, as a resident of Tennessee, would qualify for damages under a state-law intentional infliction of emotional distress cause of action.

IV. **PUNITIVE DAMAGES SHOULD BE AWARDED AGAINST THE IRGC, BECAUSE IT IS NOT A POLITICAL SUBDIVISION OF IRAN AND HAS NO CORE GOVERNMENTAL FUNCTIONS.**

Dr. Tefft testified extensively about the critical role played by the IRGC in the attack on the Marine Barracks. He characterized the IRGC as the "prime mover" behind the terrorist

atrocity, and concluded that it could not have been carried out without that group's active participation, planning, and recruitment and training activities. Tr. 62. He characterized the IRGC as a paramilitary organization akin to the "Brown Shirts," the criminal and thuggish enforcers of the Nazi party in World War II. Tr. 24. The IRGC "is not subject to the Ministry of Defense or the regular Iranian army." Tr. 25.

The IRGC cannot be fairly compared to the Foreign Ministry of Iran, which has been held to be a "political subdivision" of Iran because its core functions are "governmental." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234-235 (D.C. Cir. 2003). It is not a part of the legitimate government of the Islamic Republic of Iran, much less a "political subdivision" of that government as that term is ordinarily understood. It is a unique, influential and criminal paramilitary organization that shares some of the same goals as the government of Iran and promotes some of its purposes, acting as an agent and instrumentality of Iran, but operates outside of it. *Roeder v. Islamic Republic of Iran*, 333 F.3d 234-235, recognized that the distinction between a political subdivision and an agency or instrumentality often depends on whether the core functions of the entity are "governmental" or "commercial." However, the core functions of the IRGC are neither "governmental" nor "commercial." Rooted in Islamic fundamentalist zeal, the core functions of the IRGC are to export the theology and "revolution" of religious fanatics by violent means. The IRGC is therefore clearly not a "political subdivision" of Iran, and punitive damages should be awarded against the IRGC in an amount sufficient to deter its sponsorship of similar terrorist attacks in the future. See, e.g., *Higgins v. Islamic Republic of Iran*, 2000 U.S. Dist. LEXIS 22173, at *25 (D.D.C. 2000), awarding punitive damages against the IRGC of $300 million.

## **CONCLUSION**

For the reasons stated, the Court should enter judgment against defendants the Islamic Republic of Iran, MOIS, and the IRGC, jointly and severally, and in favor of plaintiffs, for compensatory and punitive damages. The evidence submitted and the legal principles discussed above support the award of damages to plaintiffs, and against all three defendants, jointly and severally (except for punitive damages, limited to IRGC as noted) as follows:

To Donna Marie Holland, as Executrix of Robert S. Holland's Estate, for the present value of economic damages and loss of income to the Estate:   $1,241,486;

To Donna Marie Holland, as Executrix of Robert S. Holland's Estate, for punitive damages against the IRGC: $300 million;

To Donna Marie Holland, for loss of consortium, solatium, and intentional infliction of emotional distress: $12 million;

To James Robert Holland, for loss of consortium and solatium: $12 million;

To Chad Phillip Holland, for loss of consortium and solatium: $12 million;

To Rosemary Holland, for loss of consortium, solatium and intentional infliction of emotional distress: $6 million;

To Charles Holland, for loss of consortium, solatium, and intentional infliction of emotional distress: $6 million;

To Pat Holland, for solatium and intentional infliction of emotional distress: $5 million;

To all plaintiffs, an award of punitive damages against the IRGC in the amount of $300 million.

                                      Respectfully submitted,

                                      _____
                                      Paul G. Gaston, DC Bar # 290833
                                      LAW OFFICES OF PAUL G. GASTON
                                      1120 19th Street, NW
                                      Suite 750
                                      Washington, DC 20036
                                      (202) 296-5856
                                      Fax: (202) 296-4154

                                      *Attorney for Plaintiffs*

DATED: February 18, 2005