# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DONNA MARIE HOLLAND   )
Individually and as Administrator of the )
Estate of ROBERT S. HOLLAND, deceased, )
578 Ratchford Drive   )
CIarksville, TN 37042   )
   )
JAMES ROBERT HOLLAND and )
CHAD PHILLIP HOLLAND )
578 Ratchford Drive   )
Clarksville, TN 37042   )
   )
CHARLES HOLLAND and )
ROSEMARY HOLLAND )
56 Cape Fair Drive   )
Gilbertsville, KY 42044   )
   )
PATRICK HOLLAND  )
246 Prince Creek   )
Pittsboro, NC  27312   )
   )
  **Plaintiffs**,  )
   )
  v.   ) **Civil Action No. 1:01CV01924 (CK-K)**
   )
   )
THE ISLAMIC REPUBLIC )
OF IRAN   )
Ministry of Foreign Affairs )
Khomeini Avenue United Nations )
Street, Tehran, Iran  )
   )
   )
THE IRANIAN MINISTRY OF )
INFORMATION AND SECURITY )
Pasdaran Avenue Golestan Yekom )
Tehran, lran,   )
   )
IRANIAN ISLAMIC REVOLUTIONARY )
GUARD CORPS a/k/a The PASDARAN )
Pasdaran Avenue  )
Golestan Yekom  )
Tehran, lran,   )
   )
HIZBALLAH,   )
   )

MUHSIN RAFIQ-DUST     )
Former Commander in Chief of the Pasdaran, )
           )
ALl AKBAR HASHEMI-RAFSANJANI )
Former Speaker of the Majlis    )
of the Islamic Republic of Iran,    )
           )
MOHAMMAD RAYSHARI    )
Former Minister of       )
the Iranian Ministry of Information and Security,)
           )
ALl AKBAR MOHTASHEMI    )
Former Interior Minister of the Islamic Republic )
of Iran and former Iranian Ambassador to Syria, )
           )
and          )
           )
JOHN DOES 1-99,      )
     **Defendants**.  )

## SECOND AMENDED COMPLAINT
## FOR DAMAGES PURSUANT TO THE FOREIGN SOVEREIGN IMMUNITIES ACT

Plaintiffs, by counsel, respectfully file this Second Amended Compliant against Defendants seeking damages arising out of the October 23, 1983 terrorist attack on the Marine Barracks in Beirut, Lebanon. Plaintiffs Donna Marie Holland, Chad Phillip Holland, James Robert Holland, Charles Holland, Rosemary Holland and Patrick Holland seek judgment against Defendants the Islamic Republic of lran, the Iranian Ministry of Information and Security, The Iranian Islamic Revolutionary Guard Corps, also known as the Pasdaran, Hizballah, Ali Akbar Hashemi Rafsanjani, former Speaker of the Majlis of the Islamic Republic of Iran, Ali Akbar Mohtashemi, former Interior Minister of the Islamic Republic of Iran and former Iranian Ambassador to Syria and John Does 1-99, jointly and severally, and in support of the Complaint Plaintiffs allege as follows:

## I.
## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1330(a), 1331 and 1332(a)(2).

2. Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security ("MOIS") and the Iranian Islamic Revolutionary Guard Corps ("IRGC"), also known as the Pasdaran, are subject to suit in the courts of the United States pursuant to the Foreign Sovereign Immunities Act, as amended, 28 U.S.C. § 1605(a)(7), 28 U.S.C. § 1606, and related statutes. Defendants Hizballah, Ali Akbar Hashemi Rafsanjani, former Speaker of the Majlis of the Islamic Republic of Iran, Ali Akbar Mohtashemi, former Interior Minister of the Islamic Republic of Iran and former Iranian Ambassador to Syria, and John Does 1-99 are subject to suit in the courts of the United States pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(7).

3. Venue is proper in this District Court pursuant to 28 U.S.C. §1391(f)(4).

4. Actions for wrongful death, loss of consortium, intentional infliction of emotional distress, personal injury and related torts perpetrated by foreign state sponsors of terrorism through their officials, employees and agents fall within the meaning of 28 U.S.C. §1605(a)(7), 28 U.S.C. § 1606, and 28 U.S.C.A. §1605.

## II.
## THE PARTIES

5. Plaintiff Donna Marie Holland, a resident and domiciliary of the State of Tennessee, is the widow of decedent Robert S. Holland, who died from injuries sustained during a terrorist attack on the Marine Barracks in Beirut, Lebanon October 23, 1983. Mrs. Holland was a resident and domiciliary of Kentucky at the time of her husband's death.  Plaintiff Donna Marie Holland is the Administrator of the Estate of Robert S. Holland, which was admitted to probate in Kentucky, and in that capacity, represents the interest of the beneficiaries of the Estate of Robert S. Holland.

6. Robert S. Holland was a citizen of the United States of America at the time of his death on October 23, 1983.

7.  Plaintiffs James Robert Holland and Chad Phillip Holland are the two surviving sons of Robert S. Holland.  They were residents and domiciliaries of Kentucky at the time of their father's

death, and also United States citizens.

8.   Plaintiff Patrick Holland is a surviving brother of Robert S. Holland, and a resident and domiciliary of the State of Texas.  He was a resident and domiciliary of Kentucky at the time of his brother's death.  He is also a United States citizen.

9.  Plaintiffs Charles Holland and Rosemary Holland are the parents of Robert S. Holland. They are United States citizens, presently residing and domiciled in the State of Kentucky, where they were also residents and domiciliaries at the time of their son's death..

10. Defendant the Islamic Republic of Iran (hereinafter also referred to as "Iran") is a foreign state that has been designated a state supporting international terrorism within the meaning of the Export Administration Act of 1979 (50 U.S.C. App. § 24050) and the Foreign Assistance Act of 1961 (22 U.S.C. 2371(b)) since January 19, 1984. The Islamic Republic of Iran provides material support and resources to defendant Hizballah, a politico-paramilitary terrorist organization operating in Lebanon. The Islamic Republic of Iran sponsors Hizballah, within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note, by providing it with funding, direction and training for its terrorist activities.

11. Defendant the Iranian Ministry of Information and Security (hereinafter also referred to as "MOIS") is the Iranian intelligence service, and functions both within and beyond Iranian territory. MOIS, acting as an agent of the Islamic Republic of Iran within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note, performed acts within the scope of its agency that caused the act of extrajudicial killing described below. Specifically, MOIS acted as a conduit for the Islamic Republic of Iran's provision of funds, training and direction to Hizballah for its terrorist activities, including the actions relating to the bomb attack on the Marine Barracks in Beirut,

Lebanon on October 23, 1983.

12. Defendant the Iranian Islamic Revolutionary Guard Corps, also known as Pasdaran (hereinafter referred to as "IRGC" or "Pasdaran"), is a non-traditional agency of the Islamic Republic of Iran. The IRGC, with its own separate ministry, has evolved into one of the most powerful organizations in Iran. The IRGC functions as an intelligence organization, both within and outside the country. The IRGC exerts considerable influence on the government policies of Iran. In addition, the IRGC has become a powerful military instrument for defending the Islamic fundamentalist revolution and the Islamic Republic of Iran and is dedicated to the spread of Islamic Fundamentalism principles throughout the world by acts of terrorism. The IRGC is the agency through which Iran prepared and oversaw the actions relating to the bomb attack on the Marine Barracks in Beirut, Lebanon on October 23, 1983. The IRGC, acting as an agent of the Islamic Republic of Iran within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note, performed acts within the scope of its agency as a conduit for the Islamic Republic of Iran's provision of funds, training and direction to defendant Hizballah for its terrorist activities in Lebanon, that caused the act of extrajudicial killings described below.

13. Defendant Hizballah was formed by Iran utilizing MOIS and IRGC assets as an organization to export Islamic fundamentalism to other Middle Eastern countries and the world through acts of terrorism, including, but not limited to, the actions relating to the bomb attack on the Marine Barracks in Beirut, Lebanon on October 23, 1983. Hizballah, acting as an agent of the Islamic Republic of Iran within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note, performed acts within the scope of its agency, that caused the act of extrajudicial killings described below.

14. Defendant Muhsin Rafiq-Dust is the Former Commander in Chief of the Pasdaran who

5

performed acts within the scope of his office by creating and assisting Hizballah, and coordinating and directing acts of terrorism, including the actions relating to the bomb attack on the Marine Barracks in Beirut, Lebanon on October 23, 1983. Defendant Muhsin Rafiq-Dust, acting as an agent of the Islamic Republic of lran within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note, performed acts within the scope of his office, that caused the act of extrajudicial killings described below.

15. Defendant Ali Akbar Hashemi-Rafsanjani is the former Speaker of the Majlis of the Islamic Republic of Iran who performed acts within the scope of his office by creating and assisting Hizballah, coordinating and directing acts of terrorism, including the actions relating to the bomb attack on the Marine Barracks.  Defendant, Ali Akbar Hashemi-Rafsanjani, acting as an agent of the Islamic Republic of Iran within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note, performed acts within the scope of his office, that caused the act of extrajudicial killings described below.

16. Defendant Mohammad Rayshari, is the Former Minister of the Iranian Ministry of Information and Security who performed acts within the scope of his office by creating and assisting Hizballah, and coordinating and directing acts of terrorism, including the actions relating to the bomb attack on the Marine Barracks in Beirut, Lebanon on October 23, 1983.  Defendant Mohammad Rayshari, acting as an agent of the Islamic Republic of Iran within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note, performed acts within the scope of his office, that caused the act of extrajudicial killings described below.

17. Defendant Ali Akbar Mohtashemi is the former Interior Minister of the Islamic Republic of Iran and former Iranian Ambassador to Syria who performed acts within the scope of his office by creating and assisting Hizballah, coordinating and directing acts of terrorism, including the

actions relating to the bomb attack on the Marine Barracks in Beirut, Lebanon on October 23, 1983. Defendant Ali Akbar Mohtashemi, acting as an agent of the Islamic Republic of Iran within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1695 note, performed acts within the scope of his office, that caused the act of extrajudicial killings described below.

18. Defendants John Does 1-99 are other officials, employees, and/or agents of the Islamic Republic of Iran, or others, whose identities are presently unknown, who performed acts that resulted in acts of terrorism, including the actions relating to the bomb attack on the Marine Barracks in Beirut, Lebanon on October 23, 1983. Defendants John Does 1-99 acted as agents of the Islamic Republic of Iran, within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note, and performed acts within the scope of their office, employment and/or agency which caused the act of extrajudicial killings described below.

## III.
## STATEMENT OF FACTS

19. In the summer of 1982, at the request of the Lebanese government, the United States agreed to establish a U.S. military presence in that country to serve as a peacekeeping force in the conflict between warring Moslem and Christian factions. U.S. military forces were inserted into Lebanon on September 29, 1982, as part of a multinational peacekeeping force composed of U.S., French, Italian, and later, British troops.

20. On March 24, 1983, the 242 Marine Amphibious Unit, stationed at Camp Lejeune, North Carolina to which Robert S. Holland had been assigned, received orders to transfer to Beirut, Lebanon.

21. Initially, the United States contingent of the multinational force (USMNF) was warmly welcomed by the local populace and provided a level of stability. The mission of the USMNF was to establish an environment that would facilitate the withdrawal of foreign military forces from

Lebanon and to assist the Lebanese government and the Lebanese Armed Forces (hereinafter referred to as "LAF") in establishing control and authority over the Beirut area. However, as diplomatic efforts failed to achieve a basis for a lasting settlement, the Moslem factions came to perceive the Marines as enemies.

22. Concurrently, the Islamic Republic of Iran had begun a program of carefully planned acts of terrorism designed to destabilize governments in the Middle East and export principles of Islamic fundamentalism. Its principal agents in this regard were the Iranian Ministry of Information and Security ("MOIS") and the Pasdaran or IRGC.

23. Iran, through MOIS and the IRGC, established Hizballah in Lebanon as a terrorist organization employing tactics such as kidnapping, torture and murder. The MOIS and the IRGC provided funding, training and equipment to Hizballah enabling it to pursue and achieve its mission of terrorism.

24. Hizballah operated as a terrorist organization in Lebanon under the name of the Islamic Jihad. Its members were trained in Iran and the Bekaa Valley in Lebanon at facilities established, operated and supported by defendants Iran and the IRGC.

25. The presence of United States personnel in Lebanon was viewed by the government of Iran as supportive of Israel, which was closely allied with Western governments. In Iran's view, large scale terrorist operations designed to kill Americans would cause the withdrawal of U.S. servicemen from Lebanon.

26. One of the first major acts of terrorism under the direction of Iran was the destruction of the U.S. Embassy in West Beirut, Lebanon on April 18, 1983, killing 63 people, including 17 Americans.

27. The politico/military situation continued to deteriorate. By August 1983, the LAF were engaged in direct conflict with faction militias and the USMNF positions at the Beirut International Airport were receiving hostile fire. Attacks against the multinational force in the form of car bombs and sniper fire increased in frequency. By September the LAF were locked in combat for control of

the highlands overlooking the airport, and U.S. Naval gunfire was being used in support of the LAF at Suq-A1-Gharb after determination by the National Security Council that the LAF retention of that area was essential to the security of USMNF positions at the airport.

28. Intelligence support of the USMNF revealed a broad spectrum of threats. Between May and November 1983, over 100 intelligence reports warning of terrorist car bomb attacks were received by the USMNF. The reports contained little specific information as to how and when those attacks might be carried out. From August to October 1983, the USMNF was virtually flooded with terrorist attack warnings.

29. On October 23, 1983, a large truck loaded with explosives equivalent to 12,000 pounds of TNT crashed through the barricade of the U.S. compound at the Beirut International Airport, penetrated the front entrance to the Marine Battalion Landing Team Headquarters (HQBLT) buildings and detonated. The explosion and the resulting collapse of the building killed 241 Americans, of which 220 were Marines; the remainder were Navy sailors and medical personnel. For the Marines, this was the highest loss of life in a single day since D-Day on Iwo Jima in 1945.

30. Witnesses to the bombing reported seeing a large Mercedes Benz truck traveling at a speed reportedly in excess of 35 miles per hour moving from the parking lot south of the HQBLT building through the barbed wire and concertina fencing into the main entrance of the building where it detonated at approximately 6:22 A.M. The truck penetrated the perimeter barbed wire and concertina obstacle, passed between guard positions six and seven without being engaged; entered an open gate; passed around one sewer pipe obstacle and between two others; flattened the sergeant-of-the-guard booth; entered the interior of the lobby of the building by passing through the main entrance, and exploded.

31. When the truck exploded it created an oblong crater measuring 39 feet by over 29 feet which was 8 feet in depth. Because of the design of the building (it had a large covered courtyard extending from the ground floor to the roof), the explosive force of the bomb was greatly amplified.

32. Evidence has been gathered that shows that this act was carried out by the Islamic Jihad

Organization a/k/a Hizballah under the direction of the Islamic Republic of Iran and its agencies.

33. As a result of the aforementioned terrorist act described above, 241 servicemen were killed and scores of others were wounded.

34. Robert S. Holland died as a result of injuries suffered in the explosion.

## COUNT I.
## ACTION FOR WRONGFUL DEATH

35. Plaintiffs incorporate herein by reference paragraphs 1 through 34 above as if fully set forth at length.

36. The death of Robert S. Holland was caused by a willful and deliberate act of extrajudicial killing. The explosion was caused by a bomb deliberately detonated by Hizballah, acting under the direction and supervision of the other Defendants.

37. Before his death, decedent Robert S. Holland suffered extreme bodily pain and suffering, entitling his Estate to survival compensatory and punitive damages.

38. Defendant the Islamic Republic of lran sponsored and provided material support and resources for Hizballah's terrorist activities within the meaning of 28 U.S.C. §1605(a)(7) and is liable for wrongful death damages under applicable law, including Kentucky law through the operation of 28 U.S.C. § 1606.

39. Defendants the MOIS and IRGC, acting as agents of the Islamic Republic of Iran within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C.A. § 1605, performed acts within the scope of their agency which provided material support and resources to Hizballah and which caused the death of Robert S. Holland, and are liable for wrongful death damages under applicable law, including Kentucky law through the operation of 28 U.S.C. § 1606.

40. Defendant Hizballah, acting as an agent of the Islamic Republic of Iran within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C.A. § 1605, performed acts within the scope of its agency which caused the death of Robert S. Holland.

41. Defendants Muhsin Ratiq-Dust, Ali Akbar Hashemi Rafsanjani, Mohammad Rayshari and Ali Akbar Mohtashemi and John Does 1-99 are officials, employees and/or agents of the Islamic Republic of Iran, within the meaning of 28 U.S.C. §1605(a)(7) and 28 U.S.C.A. § 1605, who performed acts within the scope of their offices, employment and/or agencies, which provided material support and resources to Hizballah and caused the death of Robert S. Holland.

42. As a direct and proximate consequence of the actions described above, for which Defendants are liable, Plaintiffs and the relatives, distributees and beneficiaries of Robert S. Holland suffered pecuniary loss, including his assistance to them, the loss of decedent's future earnings and decedent's funeral expenses.

43. Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Iranian Islamic Revolutionary Guard Corps a/k/a Pasdaran, Hizballah, Muhsin Rafiq-Dust, Ali Akbar Hashemi Rafsanjani, Mohammad Rayshari and Ati Akbar Mohtashemi and John Does 1-99 are directly or vicariously liable for their actions or the actions of their co-defendants because they controlled and/or acted in concert with Hizballah in sponsoring its terrorist activities in Beirut, Lebanon, and in providing material support and resources to Hizballah for those activities.

44. For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs and the relatives and distributees of Robert S. Holland.

WHEREFORE, Plaintiffs demand that judgment be entered in their favor, individually, and to Donna Marie Holland in her capacity as Administrator of the Estate of Robert S. Holland and on behalf of any of Robert S. Holland's relatives, distributees or beneficiaries who are not named plaintiffs in this action, against Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Iranian Islamic Revolutionary Guard Corps a/k/a the Pasdaran, Hizballah, Muhsin Rafiq-Dust, Ali Akbar Hashemi Rafsanjani, Mohammad Rayshari and Ali Akbar Mohtashemi and John Does 1-99, jointly and severally, in an amount to be determined by the Court, but no less than Twenty Five Million dollars to each Plaintiff and relative, distributee or beneficiary.

COUNT II.
## ACTION FOR SOLATIUM/LOSS OF CONSORTIUM/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

45. Plaintiffs incorporate herein by reference paragraphs 1 through 44 above as if fully set forth at length.

46. Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Iranian Islamic Revolutionary Guard Corps a/k/a the Pasdaran, Hizballah, Muhsin Rafiq-Dust, Ali Akbar Hashemi Rafsanjani, Mohammad Rayshari and Aii Akbar Mohtashemi and John Does 1-99 caused the extrajudicial killings through the act of terrorism described above.  They fully, deliberately, and maliciously intended to cause great suffering and emotional harm not only to the immediate victims of their terrorist attack, but to the close family members of the immediate victims.

47. As a direct and proximate consequence of the violent death of Robert S. Holland, Plaintiff Donna Marie Holland, Plaintiff James Robert Holland, Plaintiff Chad Phillip Holland, Plaintiff Charles Holland, Plaintiff Rosemary Holland, Plaintiff Patrick Holland and decedent's relatives, distributees and beneficiaries, have suffered extraordinary grief and mental anguish, loss of affection, companionship, society, support and consortium, and suffered from the intentional infliction of emotional distress.  These losses entitle Plaintiffs and decedent's relatives, distributees and beneficiaries to compensatory damages for solatium, loss of consortium, and intentional infliction of emotional distress under applicable law, including the law of Kentucky as applied through the operation of 28 U.S.C. § 1606.

48. For the reasons stated above, and pursuant to 28 U.S.C.A. §§ 1605 and 1606, and the law of Kentucky, Defendants are jointly and severally liable to Plaintiffs and to the relatives, distributees and beneficiaries of the decedent, Robert S. Holland.

WHEREFORE, Plaintiffs demand that judgment be entered in their favor, individually, and to Donna Marie Holland, as Administrator of the Estate of Robert S. Holland and on behalf of the relatives, distributees and beneficiaries, of the decedent Robert S. Holland, against Defendants the

Islamic Republic of Iran, the Iranian Ministry of Information and Security, the Iranian Islamic

Revolutionary Guard Corps a/k/a the Pasdaran, Hizballah, Muhsin Rafiq-Dust, Ali Akbar Hashemi

Rafsanjani, Mohammad Rayshari and Ali Akbar Mohtashemi and John Does 1-99, jointly and

severally, in an amount to be determined by the Court, but not less than  Twenty Million Dollars to

each Plaintiff, relative, distributee or beneficiary of the decedent.

COUNT III.
**ACTION FOR PUNITIVE DAMAGES**

49. Plaintiffs incorporate herein by reference paragraphs 1 through 48 above as if fully set

forth at length.

50. The actions of the Defendants, the Islamic Republic of Iran, the Iranian Ministry of

Information and Security, the Iranian Islamic Revolutionary Guard Corps a/k/a the Pasdaran,

Hizballah, Muhsin Rafiq-Dust, Ali Akbar Hashemi Rafsanjani, Mohammad Rayshari and Ali Akbar

Mohtashemi and John Does 1-99, acting in concert to carry out their unlawful objectives, were

malicious and in willful, wanton and reckless disregard of the rights of Robert S. Holland. The

Defendants, acting individually and jointly, intended to carry out actions which were calculated to

result in the brutal murder of persons in the Marine Barracks in Beirut, Lebanon where Robert S.

Holland was assigned. The actions sponsored and materially supported by Defendants were

undertaken, at such time, by those responsible individuals who were operating for, and in the

service of, Defendants, and those Defendants are, therefore, both directly and vicariously liable to

the Plaintiffs.

51. Defendants the Islamic Republic of Iran, the Iranian Ministry of Information and

Security, the Iranian Islamic Revolutionary Guard Corps a/k/a the Pasdaran, Hizballah, Muhsin

Rafiq-Dust, Ali Akbar Hashemi Rafsanjani, Mohammad Rayshari and Ali Akbar Mohtashemi and

John Does 1-99 are officials, agents, and/or employees of the Islamic Republic of Iran who

performed acts within the scope of their offices, agencies, and/or employment, which provided

material support and resources for and caused the extrajudicial killings described herein.

52. For the reasons stated above, and pursuant to 28 U.S.C.A. §1605 note, which specifically

authorizes a cause of action for punitive damages in civil actions for money damages resulting from

terrorist acts, Defendants are jointly and severally liable to the Plaintiffs.

WHEREFORE, Plaintiffs demand that judgment be entered in their favor, individually,

and to Donna Marie Holland on behalf of Decedent's Estate, and on behalf of the relatives,

distributees and beneficiaries of the decedent, Robert S. Holland, against Defendants, the Islamic

Republic of Iran, the Iranian Ministry of Information and Security, the Iranian Islamic

Revolutionary Guard Corps a/k/a the Pasdaran, Hizballah, Muhsin Rafiq-Dust, Ali Akbar Hashemi

Rafsanjani, Mohammad Rayshari and Ali Akbar Mohtashcmi in the amount of Five Hundred

Million Dollars.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court grants judgment in their favor and against

Defendants on Counts I through III, and grant Plaintiffs:

A. Compensatory damages in favor of Plaintiffs as against Defendants jointly and

severally, in the amounts demanded in this second amended complaint.

B. Punitive damages in favor of Plaintiffs as against Defendants in an appropriate

amount to be determined at trial;

C. Reasonable costs and expenses;

D. Reasonable attorneys' fees; and

E. Such other and further relief as the Court may determine to be just and equitable

under the circumstances.

Respectfully submitted,

_____
Paul G. Gaston (DC Bar #290833)
LAW OFFICES OF PAUL G. GASTON
1120 19th Street, NW, Suite 750
Washington, DC  20036
(202) 296-5856
*Attorney for Plaintiff*

Dated: November 11, 2005